# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R.1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5108-15T4

NEW JERSEY DIVISION OF CHILD
PROTECTION AND PERMANENCY,

      Plaintiff-Respondent,

v.

K.M.,

      Defendant,

and

R.A.,

      Defendant-Appellant.

_____

IN THE MATTER OF THE GUARDIANSHIP
OF J.M.,

      A Minor.

_____

Submitted May 30, 2017 — Decided June 7, 2017

Before Judges Haas and Currier.

On appeal from Superior Court of New Jersey, Chancery Division, Family Part, Hudson County, Docket No. FG-09-101-16.

Joseph E. Krakora, Public Defender, attorney for appellant (Mark E. Kleiman, Designated Counsel, on the briefs).

Christopher S. Porrino, Attorney General, attorney for respondent (Andrea M. Silkowitz, Assistant Attorney General, of counsel; Alexandra N. Vadala, Deputy Attorney General, on the brief).

Joseph E. Krakora, Public Defender, Law Guardian, attorney for minor (Charles Ouslander, Designated Counsel, on the brief).

PER CURIAM

Defendant R.A.[1] appeals from the Family Part's July 7, 2016 judgment of guardianship terminating his parental rights to his son J.M. ("John"), born in April 2014.[2] Defendant contends that the Division of Child Protection and Permanency ("Division") failed to prove each prong of N.J.S.A. 30:4C-15.1(a) by clear and convincing evidence. The Law Guardian supports the termination on appeal as it did before the trial court.

Based on our review of the record and applicable law, we are satisfied that the evidence in favor of the guardianship petition overwhelmingly supports the decision to terminate defendant's parental rights. Accordingly, we affirm substantially for the

---

[1] We refer to the adult parties by initials, and to the child by a fictitious name, to protect their privacy.

[2] The July 7, 2016 order also terminated the parental rights of K.M., who is John's birth mother. However, K.M. has not filed a notice of appeal concerning the order.

reasons set forth in Judge Anthony D'Elia's comprehensive oral decision rendered on July 7, 2016.

Because the procedural history and facts are outlined in detail in Judge D'Elia's thorough decision, a summary will suffice here. After John was born, the hospital called the Division to report that K.M. had tested positive for cocaine and marijuana and that Jack had to be transferred to a specialty hospital because he had also tested positive for cocaine and was suffering from respiratory problems. The Division took custody of John when he was cleared to leave the hospital and placed him in a resource home.

K.M. identified defendant as John's father. Defendant was in jail when the Division took custody of the child. Defendant denied that he was John's father, and the Division asked him to undergo a paternity test. Defendant refused. However, in March 2015, the Division was able to confirm that R.A. was the child's father because it had his DNA on file as a result of its previous involvement with other children defendant had fathered.

Defendant was released from custody in April 2015. After getting out of jail, defendant refused to stay in contact with the Division. He was incarcerated again in August 2015, and remained in jail until December 2015. Up until this latest period of incarceration, defendant had told the Division that he did not

want anything to do with John. However, in September 2015, he indicated he would like to see his son. Therefore, the Division arranged for defendant to have supervised visits with John at the jail. Thereafter, the only contact defendant had with John was during periods when he was incarcerated and the Division brought John to the jail to see defendant.[3]

Whenever defendant was released from jail, he simply disappeared from his child's life. Although the Division attempted to arrange for substance abuse services for defendant, he failed to comply. Defendant also refused to participate in a psychological and bonding evaluation concerning his child. When defendant was incarcerated again in April 2016, he told a Division caseworker that "he wanted to play a little bit and celebrate before doing what I have to do to get my kids." Defendant also stated that he looked forward to his release because he "wanted to use drugs and party" before contacting the Division again.

By this time, the Division had placed John with his paternal uncle, who wished to adopt him. After conducting a bonding analysis, Dr. Frank Dyer, who was qualified at trial as an expert in psychology, testified on behalf of the Division that John's

---

[3] All told, defendant visited with John on approximately eight occasions during the period between the child's birth in April 2014 and the conclusion of the termination trial in July 2016.

4                                                    A-5108-15T4

uncle was having a positive impact on the child and, in a few short months, had already formed an attachment with John "that could easily blossom into a degree of attachment where the uncle becomes his central attachment figure." Although defendant refused to submit to a bonding evaluation, Dr. Dyer opined in response to a hypothetical question that it would be "impossible for the child to develop anything approximating an attachment" to a parent, like defendant, who had only seen the child approximately eight times over a period of two years.

Defendant did not testify at trial and called no witnesses.

In his oral opinion, Judge D'Elia reviewed the evidence presented, including the uncontradicted expert testimony, and thereafter concluded that (1) the Division had proven all four prongs of the best interests test by clear and convincing evidence, N.J.S.A. 30:4C-15.1(a); and (2) termination of defendant's parental rights was in John's best interests. In this appeal, our review of the trial judge's decision is limited. We defer to his expertise as a Family Part judge, Cesare v. Cesare, 154 N.J. 394, 413 (1998), and we are bound by his factual findings so long as they are supported by sufficient credible evidence. N.J. Div. of Youth & Family Servs. v. M.M., 189 N.J. 261, 279 (2007) (citing In re Guardianship of J.T., 269 N.J. Super. 172, 188 (App. Div. 1993)).

After reviewing the record, we conclude that Judge D'Elia's factual findings are fully supported by the record and, in light of those facts, his legal conclusions are unassailable. We therefore affirm substantially for the reasons that the judge expressed in his well-reasoned opinion.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-5108-15T4